The issue in this case, at least as the appellants see it, is whether the rationale of this court's decision in Bradley v. Hall is so undercut by the U.S. Supreme Court's subsequent decision in Shaw as to both render Bradley extremely suspect and also to allow this three-judge panel to go to trial. Let me ask you a question about that. As I understood it in this case, the prisoner's communication that gave rise to the discipline was a written communication put in what they call a kite box. So it's a private communication from the prisoner to the authorities complaining about a guard. Is that correct? There's some uncertainty or perhaps at least mild disagreement in the record about whether in fact this grievance was actually put into the grievance box. And in part that disagreement arises out of the fact that it didn't follow normal channels, that instead of going to the person it was supposed to go to, it apparently went to someone else. I thought that there wasn't disagreement. So if there was, tell me where to look in the excerpts. What I'm concerned about is this. It looks like the Supreme Court case you want us to rely on is a prisoner communicating to another prisoner about staff. I can see where that could cause a lot of trouble for the prisoner. In this case, it's a prisoner communicating to the authorities in the designated way in order to make a complaint about a guard. And if he wants to make a complaint about a guard doing something improper sexually, I can't see how he can do it without talking about the sexual material. And it looks like he's not stirring things up with the other prisoners. So I'm really concerned with what the record says about who he communicated to. I thought that was not an issue on appeal. I don't see any indication on appeal that the state is... We certainly have not made a point out of it. I simply want to note that there is that question. So on appeal, it seems to me our position, it looks to me like the position of the district court is, yes, it was a grievance. Right. And it was not. And it was. The record certainly does give you a chance to argue it. But it's I see it has never been argued. And the and the position is it was a grievance. And we'll take it on that. I agree. Is that correct? I just want to go back to a to a point that Judge Kleinfeld made and respond to it. The hearings officer made it very clear during the hearing and their portions of the transcript in the excerpt that had Mr. Terabaccia stated his complaint as he managed to say that the hearing that is without the kind of gloss and colorful language, if you will, that he put in his grievance, that the hearing officer would have thought that that was not disrespectful at all. We're just we're just talking about the grievance. Right. But had Mr. Terabaccia simply said this female corrections officer comes into the shower, watches men showering, seems to stay there too long, has too much interest in this, makes us feel uncomfortable, whatever, the hearings officer would have said that's not disrespect. That's simply stating what your complaint is. That's exactly like Bradley. The same the same is true in Bradley. I mean, if you can't knock us out, if you can't knock this out with with the Supreme Court case in Shaw, I think you conceded in your brief basically that it's it's all over. Yes. But I guess maybe you said that's Bradley. And I guess maybe I'm not sure whether you mean Bradley was using violence. Yes. Yes. No, this is this is the same rule as it is issue in Bradley. It's he didn't even use vile language. It was funny language. I'm thinking I'm thinking it takes a lawyer sometimes to come up with a euphemism. And sometimes it takes repeated tries to come up with a euphemism. So you can say what you want to say without it being vulgar in the circumstances. These prisoners, most prisoners, I guess they're exceptions. Most of them aren't the people that were the valedictorians of their high schools and really got 700 plus on their SAT verbal. No, I agree. Although the hearings officer specifically found and I'm looking at E.R. 72, that he believed that it was Mr. Parabati's intent to just kind of make a slur against the guard rather than to simply state a valid complaint. What complaint wouldn't be a slur against the guard? It's the slur is not the factual allegation. The slur is the language used, calling her a pervert, saying that she has a preference for men of black skin. That probably isn't even a slur because that could be factually true. But it's the language used. If a male guard was standing around looking at the naked female prisoners in a shower, I can't imagine they wouldn't call him a pervert. But you don't need to do that in order to state the complaint. That's simply a characterization thrown in in order to be scurrilous against the guard. You know, that's the whole problem. The if you look at Shaw, for example, Shaw said, look, we want the courts mucking around with the particular words, the particular content going between prisoner. And what you're asking here is that in this area, the courts do muck around with a particular word. What Bradley says, we're not going to worry about the words. We're just going to characterize the nature of the thing. It's a grievance. It's a court thing, in effect. It's part of the right to petition courts, et cetera. It's what Bradley said. So we're not going to worry about what the details of the words are. But you're asking you're saying now, oh, no, what we want the courts to do in this case is to look at each grievance, look at all the words and see if it was properly. No, because I think you should defer to the to the institution's judgment as to whether the words are in fact abusive, scurrilous, hostile, whatever those series of adjectives are that are in the rule. But where I think this court. The trouble is that this court's approach in Bradley really means that the institution is not able to look at any grievance and decide that it has gone over a line. For example, an inmate might. What if he was right? What if there really was. What if this was kind of a Abu Ghraib sort of situation and the prison says, well, yeah, you're right. We're going to discipline her. We're going to discipline you, too, because of the way you said it. That would be the logical outcome of your position, wouldn't it? I'm sorry. Something about the question didn't make it through my brain. Let's suppose that the guard really did have a personal motive of sexual humiliation toward the prisoners. Hypothetically. I mean, you know, I've handled a lot of prison cases, as any judge has. This is purely hypothetical. I'm not suggesting it. Let's suppose that. It seems to me the logical outcome of your position is that if the grievance process proceeded correctly, the guard would be disciplined. The prisoner would also be disciplined for the way he said it. Is that right? Yes. And I would hasten to add I'm sure the guard would be considerably more disciplined if these facts were true. Why wouldn't that have the practical effect of preventing sensible, public-spirited, but self-protective prisoners from telling the authorities about guards who misbehave? But again, our complaint is not with the fact of making a complaint against a guard, per se. You can make any complaint, no matter how serious the charges, no matter how shocking they might be. What you can't do is, in the course of that, use language that's hostile or threatening or abusive. And it's perfectly possible, I think, for anyone to state a complaint without doing that. Well, it's not all that shocking. I mean, I'm looking at Excerpts of Record 54. I think that's it, right? Maybe a couple of different versions that are in here. No, I don't. I'm not claiming it's the most shocking document that any of us, by far, even approaching the most shocking document that any of us has seen. That said, I think I'll save my 40 seconds for rebuttal. Certainly. Good morning, Your Honors, and may it please the Court. My name is John Schockett, and I represent the Atelier Laurent-Tarabacchia. With me at council table are Mike King and Ray Bacci, who are also on the brief. There are two issues in this case. First, whether Bradley remains the law of the circuit, and second, whether appellants are entitled to qualified immunity for violating my client's constitutional rights. I'm going to begin with the issue of whether Bradley continues to be the law of the circuit, and I will move on to the qualified immunity issue later. First, to clear up a few points. As the panel noted, there's no issue as to whether this was a properly submitted grievance. Indeed, on page 12 of their opening brief, appellants acknowledge that if Bradley controls, they have to lose this case. Well, isn't the real question not whether it was a grievance, but whether you can give extra weight, as it were, to the fact that it is a grievance, instead of simply looking and stopping with the question of whether the disrespect rules are a reasonable prison regulation? Yes, Your Honor, that is the question. And that's why this is an as-applied challenge to the disrespect rules. It's not an absolute challenge. Well, I understand that. But if that's the question, then aren't we squarely in shawl land, where having answered and it's conceded here that the regulation is reasonable, then we cannot look at content. No, Your Honor. The reason that this – that Shaw doesn't cover this case and the reason that Shaw is not clearly irreconcilable with Bradley is that they implicate different rights. I'm sorry. I just – there was a little noise and I didn't hear what you said. They clearly implicate – They implicate different rights. Thank you. Shaw was a free speech case. It dealt with the issue of free speech in the context of prisoner-to-prisoner communications. This is a right to access the courts and a right to petition the government for address. Shaw was an attorney-client. Basically, it's the prisoner's right to give legal advice to another prisoner, which surely implicates access to the courts. I don't see how you can distinguish it on that footing. It doesn't involve the right to petition the government for redress of grievances, which has been clearly upheld, not just in the non-prison context, but explicitly in the prison context. Sure. But the point is that, at least as I read Shaw, it is saying – I'm not saying that it has undermined the result in Bradley necessarily, but it for sure said that Bradley's balancing test, that weighs whatever the constitutional right being asserted by the inmate is, against the prison's interest, is not appropriate. I'll begin to answer that by noting that if you take the balancing language out of Bradley, Bradley still remains good law and it can stand without the balancing language. And I'd appreciate your telling me why you think so. Part of it is because it is in the prison's application of the disrespect rules to the content of a grievance. And the difference between measuring the content of a grievance and the content of a prisoner-to-prisoner communication is that the prison doesn't even need to measure the content of a grievance. A grievance is on a specific form, and everything on that form is something the prisoner can't be punished for because it's part of the grievance process. Under the Ninth Circuit opinion in Murphy v. Shaw, the prison would have had to go through every single communication and decide whether it was protected legal prisoner-to-prisoner speech or normal unprotected speech. And that's a substantially higher burden. And that's how it was. Well, so just because a prisoner puts a label grievance on it, he can say whatever he feels like saying about anybody in any language and for any purpose. Bradley doesn't go that far. Right? I mean, is that your position? No. It can't be frivolous. Bradley doesn't hold that frivolous grievances are protected. Bradley doesn't hold that grievances that contain threats are protected. But in this case, there's no allegation that a threat was contained, and there's no allegation that the grievance was frivolous. Okay. As I understand it, you're not claiming protection on the basis that the label grievance is at the top of the page. You're claiming protection because it was filed as a grievance in the kite box rather than communicated to other prisoners. Precisely. Yes. If a grievance form was handed around in a cell to other prisoners, that wouldn't be protected because it's not part of the grievance process. It's only when it's submitted as part of the grievance process that it's protected as part of the right to access the courts and petition the government for redress of grievances. But under Turner, taking out the balancing language, the disrespect rules as applied to the grievance process still cannot stand. It's an exaggerated response. And under the prison legal news line of cases that has come down from this court, since Bradley was decided, there isn't even a rational relationship between the application of those rules to the grievance process and the prison stated concerns. The prison says it's concerned that the prisoners would share grievances with each other and they'd look at them and that would foster disrespect. The prison is concerned that there could be direct communication between a prisoner and a guard that would foster an atmosphere of disrespect. But none of those things have anything to do with a grievance that is properly submitted through the grievance process. And because of that, there's just not a rational relationship. And that was the case under Bradley, and it's even more the case today under the prison legal news cases that have struck down three mail regulations of prisons within this circuit's jurisdiction on the grounds that there simply wasn't a rational relationship between the state of penological purpose and the prison. But you can see that there's a rational relationship in this case. There's a rational relationship for the rules in general, but not as applied to grievances, because a grievance properly submitted isn't shared with prisoners. It doesn't create an atmosphere of disrespect among the prisoners. It's not shared. Well, that's just Bradley by a different name. Because all you're doing there is giving greater weight to the nature of the constitutional right being asserted, and that's what Shaw says we can't do. That's not taking the constitutional right into account at all. Well, sure it is, because you're saying because it's a grievance, I'm going to now weigh the grievance against the legitimacy of the state's interest. What that argument says, Your Honor, is that because it's a grievance, it doesn't implicate any of the concerns that the prison says justify punishing my client for disrespect. It goes directly from the inmate to the kite box, and it goes to the grievance officer, who's someone that does not have day-to-day contact with the inmate. And submitting a grievance through that channel does not foster an atmosphere of disrespect in any of the ways that the prison claims it does. And if it did, if it was shared with the other prisoners, or if the prisoner told his fellow inmates what he said in a grievance, those would be different issues, and those wouldn't be protected by Bradley. But the specific conduct that is protected by Bradley, conduct that encourages prisoners to submit or that allows prisoners to submit grievances freely, is not conduct that in any way is related to the concerns that the prison states. And you can say that whether you consider the importance of the constitutional right to file grievances or not. It fails the rational relationship test alone, and Bradley can be reaffirmed on that ground. But this Court doesn't even need to get to that point, because what Appellant didn't say in the opening argument is that you can't just point to some tension between Bradley and Shaw and say, therefore, Bradley must be overruled. Bradley's a binding precedent of this Court. They have to be clearly irreconcilable under this Court's and Bank Opinion and Miller v. Gammy. And Appellant has not established that. They dealt with different contexts, and on those grounds, Bradley can stand in light of Shaw, because Shaw dealt with what was an extension of Bradley's initial rule. It protected a class of prison activity that had not typically been protected, inmate-to-inmate communications. And that's something that Turner specifically said in general isn't protected. In contrast, Bradley dealt with the right to access the courts and to petition for the government to redress the grievances. And those are rights that, by default, are protected even in the prison context. That's what you're just going right back to the balancing test again when you say that. Yes. And that's our primary argument, that Bradley and its balancing test are appropriate even under Shaw. Under Shaw. All right. But even if this Court — And you — is — does your — are we required to accept that proposition for you to prevail? No. Even if this Court finds that Shaw overruled Bradley's reasoning to the extent that they're clearly irreconcilable, Bradley's rule is still the correct rule because of the argument that I made before, which is that under the prison legal news line of cases, there isn't a sufficient rational relationship between the prison's stated justifications for applying the disrespect rules to grievances and actually using that rule. Okay. You're not saying — you're saying as applied to grievances. You're not saying as applied to this inmate's grievances. Well, as applied to grievances in general. Okay. Particularly as applied to this inmate's — Then I don't see the difference. — grievance. This inmate's grievance wasn't frivolous and it wasn't threatening. It only had some disrespectful language, but it was submitted through the proper process. Unless the Court has any further questions. No. Thank you, Mr. Sheffield. Thank you. Ms. Metcalf. I have nothing to add unless the Court has any additional questions. Thank you. Thank you, counsel, both of you, for your argument in this matter. And the matter of just argument will be submitted. And the next here argument and matter goes here. Thank you very much.
judges: Fernandez, Rymer, Kleinfeld